## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00580 (DLF)** |
| **v.** | : | |
| | : | |
| **ROBERT BALLESTEROS,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Robert Ballesteros ("Ballesteros") to fourteen days incarceration, 60 hours of community service, and $500 restitution.

### I.     Introduction

The defendant, Robert Ballesteros, a safety manager, carpenter, and entrepreneur, knowingly and willfully participated in the January 6, 2021, attack on the United States Capitol – a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than one million dollars of property damage. Ballesteros pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of fourteen days incarceration and three years' probation is appropriate in this case because: (1) Ballesteros entered the U.S. Capitol without permission to do so and engaged in disorderly and disruptive conduct in the U.S. Capitol with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress;

1

(2) Ballesteros observed a mob of rioters breach the Senate Wing Door as a line of police officers attempted to prevent the mob's entry into the U.S. Capitol; (3) while inside of the Crypt, Ballesteros proudly recorded himself proudly exclaiming "we broke in" and "we are in the Capitol"; (4) Ballesteros posted video of himself inside of the U.S. Capitol to his Instagram page; (5) Ballesteros professed to having filmed footage of the shooting of Ashli Babbitt; (6) defendant deleted posts made to his Instagram account and deleted video and photographs of January 6 from his cellular telephone; (7) Ballesteros' criminal history, which includes a conviction for criminal possession of stolen property, convictions for traffic infractions and an arrest for criminal mischief; and  (8) Ballesteros' statements located on his Instagram Direct Message after January 6 reveal a lack of remorse.

Even if he didn't personally engage in violence or property destruction during the riot, before entering the Capitol on January 6, Ballesteros celebrated the violence of that day with over 500 individuals via his personal Instagram account. Ballesteros posted a video to Instagram of the attack on the U.S. Capitol and can be heard screaming "we broke in!" and "we are in the Capitol!" while other rioters stormed inside of the U.S. Capitol.  After leaving the U.S. Capitol, Ballesteros recounted what happened to the Instagram followers who sent him direct messages about January 6.  At no time did Ballesteros express remorse for his conduct.  On the contrary, Ballesteros boasted about being inside of the U.S. Capitol and remarking that an individual who threatened to report Ballesteros was a "rat."

The Court must also consider that Ballesteros' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification

vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Ballesteros' participation in a riot that actually succeeded in halting the Congressional certification combined with his celebration and endorsement of the violence on that day, his lack of remorse, and the potential for future violence renders a sentence of incarceration as opposed to a sentence to probation warranted in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 28 (Statement of Offense), at 1-5. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Ballesteros' conduct and behavior on January 6.

### Robert Ballesteros' Role in the January 6, 2021 Attack on the Capitol

The defendant, Robert Ballesteros, drove from his residence in Mahopac, New York to Washington D.C. to attend a rally protesting the election results on January 6, 2021.  On January 6, 2021, at approximately 2:15 p.m., Ballesteros walked to the U.S. Capitol. The U.S. Capitol was initially breached by the Senate Wing door when a rioter kicked open  a window at approximately 2:13 p.m. Upon arriving at the U.S. Capitol, Ballesteros made his entry into the U.S. Capitol, first being captured on CCTV surveillance footage entering through a doorway near a Senate Wing door at approximately 2:25 p.m.



*Figure A*

After entering, Ballesteros documented his time inside of the U.S. Capitol by recording himself on his cellular telephone and posting a video to his personal Instagram page. Ballesteros was located on CCTV inside of the Crypt wearing a red, white, and blue jacket, jeans, and a face mask.



*Figure B*

While in the Crypt, Ballesteros filmed a video of himself celebrating his entry into the U.S. Capitol. *See* Exhibit 1.[1] In the video, Ballesteros can be seen with a mob of rioters who flooded into the Crypt as well.

---

[1] Pursuant to the Court's January 7, 2022, Order, the government is providing the Court with video footage that shows Ballesteros' actions on January 6, 2021.  While the government is providing the videos (Exhibits 1 and 2) to the Court through the USA*fx* drop box, the government will make the vide footage publicly available without restrictions by providing access using the "drop box" technical solution described in Standing Order 21-28.



*Figure C*

While filming himself, Ballesteros panned to the mob of rioters who can be heard chanting in the background. In the recording, which was later posted to Ballesteros' Instagram account where his over 500 followers could view the video, Ballesteros can be heard exclaiming: "We're inside. We're inside the Capitol! Look at this! Look at this! We broke into the Capitol building!

CCTV surveillance camera also showed Ballesteros after he left the Crypt, making his way to one of the main breach point, the entrance near the Senate Wing Door at approximately 2:48 p.m. *See* Exhibit 2. *Exhibit* 2 shows a large mass of rioters attempting to enter the U.S. Capitol through the entrance near the Senate Wing Door. A line of U.S. Capitol Police Officers attempted to prevent the entry of the angry mob. Based upon footage obtained prior to the breach, Ballesteros

was located in the hallway near the breach point, seconds before the breach occurred.  As such, Ballesteros would have observed the beleaguered police line attempting to hold their line. Ballesteros also would have observed the mob of rioters pushing against the door's entrance and gathering near the Capitol windows as they ignored police warnings not to enter the building.  At no point did Ballesteros attempt to exit the hallway.  Instead, he stood by and watched the chaos and mayhem as it unfolded before his eyes.



*Figure D*



*Figure E*



*Figure F*

Ballesteros remained inside of the Capitol for approximately twenty-six minutes.  Based

upon information known at this time, the government believes that Ballesteros spent most of his

time in the U.S. Capitol inside of the near the Senate Door entry, the Crypt, and the Orientation

Lobby, before exiting the building at approximately at the Senate Wing Door at approximately 2:51 p.m.

*Social Media Posts*

In the aftermath of January 6, the FBI obtained social media records from Ballesteros' Instagram account, "robbyb45."  On January 6, Ballesteros had over 500 Instagram followers.



*Figure G*

One follower was Individual-1.  After the January 6 siege, Individual-1 informed the FBI that he/she knew that Ballesteros had been inside of the U.S. Capitol on January 6 because he/she had seen Exhibit 1 posted on Ballesteros' Instagram page.  Ballesteros posted the now-deleted video of himself parading, picketing, and demonstrating inside of the Crypt to his Instagram Story on January 6.  Individual-1 recorded the video to his/her cellular telephone.

According to Individual 1, when he/she went to view the video from Ballesteros' Instagram Story a second time on January 6, the video was no longer available.  Videos posted to Instagram Story are normally able to be viewed for a period of 24 hours before the video disappears from the account owner's feed. Individual-1 attempted to review the video within 24-hours of it being

posted.  Because the video was no longer available within the 24-hour period, Individual-1 told

FBI that he/she believed that Ballesteros removed the video.

In addition to the video of Ballesteros inside of the Crypt. Individual-1 was able to capture

a since-deleted picture that Ballesteros took of the exterior of the U.S. Capitol on January 6.



*Figure H*

Interestingly, a number of metal barricades can be seen placed outside of the U.S. Capitol on the grounds of the U.S. Capitol.  Ballesteros would have seen these metal barricades prior to making entry into the building.

In addition to the video, Exhibit 1, and the photograph, *Figure G*, mentioned previously, Instagram records obtained by the FBI contain digital conversations in which Ballesteros discussed what he observed on January 6.  In one conversation, on January 7, 2021, Ballesteros admitted that he was inside of the U.S. Capitol.

> **Author** ugandan_prince22 (Instagram: 249442645)
> **Sent** 2021-01-07 05:43:07 UTC
> **Body** Did u deadass go to Washington?
>
> **Author** robbyb45 (Instagram: 509730351)
> **Sent** 2021-01-07 05:43:15 UTC
> **Body** Ofc
>
> **Author** ugandan_prince22 (Instagram: 249442645)
> **Sent** 2021-01-07 05:43:22 UTC
> **Body** U storm the building
>
> **Author** robbyb45 (Instagram: 509730351)
> **Sent** 2021-01-07 05:43:25 UTC
> **Body** Put my foot in that door
>
> **Author** robbyb45 (Instagram: 509730351)
> **Sent** 2021-01-07 05:43:31 UTC
> **Body** Made my stand

*Figure I*

This conversation occurred one day after the January 6 riot.  Presumably, Ballesteros would have learned about the violence and loss of life that occurred on the day based on the extensive television coverage that featured January 6.  Nevertheless, Ballesteros lauded the fact that he "put my foot in the door" and "made my stand."  Ballesteros appears to be proud of the fact that he "stormed" the Capitol.

Ballesteros confirmed that he did, indeed, video his time at the U.S. Capitol, and that he had removed the video.  This communication corroborated the statement provided by Individual-1 in which he/she told FBI that Ballesteros had likely removed the video from his Instagram Page.

**Author** ugandan_prince22 (Instagram: 249442645)
**Sent** 2021-01-07 05:43:31 UTC
**Body** Where's the video

**Author** ugandan_prince22 (Instagram: 249442645)
**Sent** 2021-01-07 05:43:38 UTC
**Body** If it ain't on video it's cap 🧢

**Author** robbyb45 (Instagram: 509730351)

---

**Instagram Business Record**

**Sent**
             2021-01-07 05:43:39 UTC
**Body** Took it down

*Figure J*

In one particularly disturbing moment, Ballesteros stated that he took video of the shooting of a female rioter who was killed on January 6.  Based on information obtained from January 6, it appears that Ballesteros was referring to the shooting of Ashli Babbitt.  The communication is as follows:

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:45:03 UTC
**Body** Some lady was killed

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:45:08 UTC
**Body** I got the video of that too

**Author** ugandan_prince22 (Instagram: 249442645)
**Sent** 2021-01-07 05:45:17 UTC
**Body** Yooo lemme see those in person

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:45:18 UTC
**Body** She was shot for nothing

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:45:20 UTC
**Body** Literally

*Figure K*

Ballesteros opined that the woman "was shot for nothing." FBI did not locate video footage of the murder of Ashli Babbitt on Ballesteros' phone. Either Ballesteros deleted any footage that he had of the shooting, or he lied about having filmed the footage. Either way, his account of having filmed the shooting further reflects a lack of remorse and an inability to understand the severity and consequences of his actions and that of the mob rioters.

His disdain for individuals who provided information to law enforcement after January 6 is also reflected. At the end of this conversation, Ballesteros told the individual that another individual who had seen his video, presumably Exhibit 1, told Ballesteros that he "tipped of[f] the hotline."

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:46:03 UTC
**Body** Lol some kid told me he tipped off the hotline

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:46:06 UTC
**Body** Of the video

**Author** robbyb45 (Instagram: 509730351)
**Sent** 2021-01-07 05:46:18 UTC
**Body** Fag

*Figure L*

Ballesteros' communications on January 7 indicate a complete lack of remorse for his actions the previous day.

Since this communication, Ballesteros has admitted that he knew at the time he entered the U.S. Capitol Building that he did not have permission to do so, and that he engaged in disorderly and disruptive conduct in the Capitol Building with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress.

*The Charges and Plea Agreement*

On September 15, 2021, Ballesteros was charged in a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. On October 28, 2021, he pled guilty to the Information. By plea agreement, Ballesteros agreed to pay $500 in restitution to the Department of the Treasury.

**III.   Statutory Penalties**

Ballesteros now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Ballesteros faces up to six months of imprisonment and a fine of up to $5,000. Ballesteros must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072,

1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of incarceration.

In this case, as described below, some of the Section 3553(a) factors weigh in favor of a period of incarceration, as opposed to a sentence of probation:  (1) Ballesteros entered the U.S. Capitol without permission to do so and engaged in disorderly and disruptive conduct in the U.S. Capitol with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress; (2) Ballesteros observed a mob of rioters breach the Senate Wing Door as a line of police officers attempted to prevent the mob's entry into the U.S. Capitol; (3) while inside of the Crypt, Ballesteros proudly recorded himself proudly exclaiming "we broke in" and "we are in the Capitol"; (4) Ballesteros posted video of himself inside of the U.S. Capitol to his Instagram page; (5) Ballesteros professed to having filmed footage of the shooting of Ashli Babbitt; (6) defendant deleted posts made to his Instagram account and deleted video and photographs of January 6 from his cellular telephone; (7) Ballesteros' criminal history, which includes a conviction for criminal possession of stolen property, convictions for traffic infractions and an arrest for criminal mischief;

and  (8) Ballesteros' statements located on his Instagram Direct Message after January 6 reveal a lack of remorse.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at Ballesteros' individual conduct, this Court should assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated

sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Ballesteros personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Ballesteros is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Ballesteros from most other misdemeanor defendants. Ballesteros's lack of violence and property destruction is the reason he was charged only with, and permitted to plead to, a misdemeanor rather than felony.

While inside of the U.S. Capitol, Ballesteros observed rioters breach the entrance near the Senate Wing Door, entering the building by destroying the property.  At the time, a line of police officers attempted to hold their line to resist the mob's entry.  Rioters pushed their way into the U.S. Capitol by overriding the police line, bursting through the doorway and nearby windows.  At the time Ballesteros was standing in the hallway, a crowd of rioters flooded the hallway near the Senate Wing Door.

Prior to observing this breach, Ballesteros exclaimed and celebrated his entry into the building.  Entering the U.S. Capitol shortly after the breach of the Crypt, Ballesteros praised the fact that he entered the Crypt by stating "We stormed the Capitol."

 Ballesteros has since admitted to knowing that he did not have permission to enter the U.S. Capitol.  His observation of seeing rioters violently enter the U.S. Capitol is evidence that Ballesteros knew that he and the rioters were not authorized to enter the U.S. Capitol.

Ballesteros celebrated the violence and his entry into the building when he exclaimed, "we broke in" and "we are in the Capitol."  By posting the video to Instagram, he clearly sponsored the

content. Ballesteros's posting of the video to Instagram, demonstrates that he wanted to share with others that the police were outnumbered and overcome by the rioters.

Ballesteros' statements after January 6 show a total lack of remorse. When asked if he stormed the building, Ballesteros exclaimed, "Put my foot in that door. Made my stand." Ballesteros was proud of his entry even after having time to contemplate his actions the following day. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Ballesteros' History and Characteristics of the Defendant

As set forth in the PSR, Ballesteros' criminal history consists of a 2014 misdemeanor conviction for Criminal Possession of Stolen Property and a traffic infraction. Ballesteros' criminal history also consists of numerous arrests. ECF 30 ¶¶ 28-36.

Since 2014, Ballesteros has been employed as a safety manager and carpenter with his father's company, B and V Contracting Enterprises. Ballesteros' father describes his work performance as "very good." Ballesteros is also self-employed, selling items such as leather and suede, and clothing. While Ballesteros refers to his business as a "side hustle," he formed a limited liability company in September 2021. U.S. Probation has reviewed Ballesteros' financial condition and has determined that because he appears to have a negative net worth, while having a having a positive cash flow

The PSR documents Ballesteros' mental and emotional health. Since 2014, Ballesteros appears to have struggled with mental health issues.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and

appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### C.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

> [the defendant] and others caused that day goes way beyond the several-hour delay
> in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Ballesteros' conduct on January 6 is particularly concerning. Ballesteros was near the breach of the Crypt, making him one of the initial individuals to enter the U.S. Capitol through the Crypt. Upon entering, he ecstatically and exuberantly mused about the fact that he had managed to get inside of the Capitol. He filmed himself and the mob of rioters entering inside of the Crypt and sponsored his conduct by posting the video to his Instagram page for over 500 followers to view.

Upon leaving the Crypt, Ballesteros walked towards yet another police line. U.S. Capitol Police Officers standing in a police line near the Senate Wing door attempted to keep rioters outside of the building. Ballesteros stood by and looked on as the mob of rioters breached the Senate Door entry. Upon arriving in the hallway and observing the police line, Ballesteros could

have decided to leave the building.  Instead, he remained in the hallway as the rioters flooded the hallway.  He remained inside of the Capitol for a period of approximately 30 minutes.

The following day, after leaving the U.S. Capitol, and having time to think about his actions, which according to him, included filming the shooting of Ashli Babbit, Ballesteros did not indicate that he was remorseful.  Instead, he remarked about "putting his foot in the door" another way of proclaiming that he made his mark that day by unlawfully entering the U.S. Capitol. Ballesteros was unashamed and unapologetic.

There is evidence that Ballesteros also attempted to hide what he did on January 6 once he learned that his video may have been provided to law enforcement officers investigating the January 6 attack.  At no point did Ballesteros state that he removed the images because he was remorseful.  He instead referred to those who were notifying law enforcement about January 6 rioters as "rats."

**Author** robbyb45 (Instagram: 509730351)
  **Sent** 2021-01-07 05:46:52 UTC
  **Body** Yo if they didn't have no rats

**Author** robbyb45 (Instagram: 509730351)
  **Sent** 2021-01-07 05:46:58 UTC
  **Body** They would have nothing

**Author** robbyb45 (Instagram: 509730351)
  **Sent** 2021-01-07 05:47:00 UTC
  **Body** Ever

*Figure M*

Ballesteros' statements on social media clearly demonstrate the need for specific deterrence. Ballesteros celebrated the violence of the day after January 6 by posting a video where he cheered the rioting and his unauthorized entry into the U.S. Capitol. After the attack, Ballesteros asserted on Instagram, "Look at this. We broke into the Capitol building" as others in the crowd

scream, "Our house." The following day, Ballesteros engaged in a conversation with a friend and proudly celebrated his entry into the U.S. Capitol.

As of the date of this filing, Ballesteros has not expressed remorse. The government acknowledges that Ballesteros accepted responsibility early by entering into this plea agreement.

### D. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[4] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that

---

[3] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19.

Ballesteros has pleaded guilty to a one count Information charging him with Parading, Demonstrating, or Picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long she remained inside, the nature of any statements she made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with

significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may consider the sentences imposed on *United States v. Stephanie Miller* and *Brandon Miller*, 21-cr-266-TSC for reference. In *Miller*, Stephanie Miller and her husband, Brandon Miller, entered the U.S. Capitol through a broken window by the Senate Wing. Stephanie Miller and Brandon Miller made statements after January 6 showing pride rather than remorse or contrition for their conduct. After entering, Miller walked to the Crypt, walked through a hallway by the Memorial Door, and then into a hallway by the House Wing Door. While inside, Brandon Miller broadcasted a video over "Facebook Live." In the video, Brandon Miller proclaimed phrases such as, "We made it inside the Capitol," "This is our building." The Millers were inside of the U.S. Capitol for approximately ten minutes. Similar to Ballesteros, Brandon Miller shared a number of direct messages with is Facebook friends in which he described what happened at the U.S. Capitol. On January 7, 2021, he wrote to one friend: "We was there it was peaceful yeah we got in. Capital [sic] but wasn't burning down the city or destroying businesses just a couple broke windows in a taxpayers building they work for us." Stephanie Miller also communicated with friends via her Facebook direct message after January 6. In those messages, Stephanie Miller did not express remorse for her conduct. Considering the fact that the Millers' path of travel through the U.S. Capitol was somewhat similar to that of Ballesteros, and the fact

that the Millers and Ballesteros utilized their personal social media accounts to proudly promote their misconduct on January 6, the government believes that their cases are comparable.  In *Miller*, the Court sentenced Stephanie Miller to fourteen days' incarceration and sixty hours of community service.   Brandon Miller was sentenced to twenty days' incarceration and sixty hours of community service.

Ballesteros was inside of the U.S. Capitol for a limited period of time, longer however, than the time that the Millers were inside of the U.S. Capitol.  Upon entering, Ballesteros would have heard alarms going off inside of the U.S. Capitol, signaling to him that he was unauthorized to enter the building.  Indeed, Ballesteros has since admitted that he knew that he was not authorized to enter the building.  When Ballesteros entered, a mass of rioters was also making their entry inside of the building. Ballesteros continued to make his way into the building, eventually finding himself inside of the Crypt along with another mass crowd of rioters.  While in the Crypt, Ballesteros did not stop to reflect upon his conduct.  Instead, he recorded video of himself "breaking into the Capitol." He would post this video to his Instagram account, thereby sanctioning and promoting his conduct.  After leaving the Crypt and returning to an entrance near the Senate Wing door, Ballesteros observed a line of police officers attempting to hold their line from an incoming mass of rioters.  Ballesteros observed the line be breached. Nevertheless, after leaving the U.S. Capitol, he communicated his thoughts about what happened and continued to standby his conduct and that of the mob of rioters.

While inside of the building, Ballesteros, like the Millers, did not commit any violent or destructive behavior.   Ballesteros posted pictures of himself inside of the U.S. Capitol on January 6 and celebrated his unauthorized entry in the building on the following day.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.      Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Robert Ballesteros to fourteen days incarceration, 60 hours of community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:      _____
BRITTANY L. REED
LA Bar No. 31299
Assistant United States Attorney (Detailee)
U.S. Attorney's Office
650 Poydras Street, Ste. 1600
New Orleans, LA 70130
Office: 504-680-3031
Brittany.Reed2@usdoj.gov