UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No.   21-cr-580 (DLF) |
| ROBERT BALLESTEROS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Robert Ballesteros, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Robert is a 28 year old young man who has had a tumultuous past. He grew up with barely any parental supervision and watched his mother struggle with substance abuse until she passed away from a heroin overdose when Robert was only sixteen years old. After his mother's death, Robert struggled with his mental health ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Robert recognizes that he needs assistance and sincerely regrets his conduct. For these reasons and the reasons discussed below, he respectfully requests that the Court impose a sentence of 24 months' probation with the condition that he

1

complete 60 hours of community service, complete mental health treatment, and pay $500 restitution.

## BACKGROUND

Mr. Ballesteros entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Ballesteros, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. Mr. Ballesteros did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building.[2] Mr. Ballesteros will appear for

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

[2] The government, in its sentencing memorandum, has suggested that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, they would be charged with felony offenses. *See* Gov. Memo at 17. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. *See United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Stotts*, 21-CR-272 (TJK)

sentencing on March 22, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

I. **Legal Standard**

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

II. **Imposing a Sentence of Twenty-Four Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

a. **Mr. Ballesteros's Personal History and Characteristics**

---

(court imposed two months' home detention despite Stotts shouting at police and scaling wall to gain access to Capitol).

3

Robert was born in Peekskill, New York and has resided in Upstate, New York for the majority of his life. His parents divorced when he was very young due to mother's drug use. Robert lived with his mother after the divorce and she re-married shortly thereafter. Robert began to notice that his mother would leave the house unexpectedly and that his step-father would have to go look for her. Robert did not understand at the time but now knows this was due to her drug use. Robert moved in with his father for this reason and was raised primarily by him, although he remembers his father was often working and was home with a nanny for most of his childhood. Robert also observed constant fighting between his father and his first stepmother.

Robert had the basic necessities growing up but knew that his parents struggled financially. He excelled in athletics and loved playing baseball throughout his childhood and adolescence. When Robert was a sophomore in high school, his mother tragically passed away due to a heroin overdose. His mother's death was devastating to him and has had long lasting effects on his mental health.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████████



Robert is committed to his treatment and has often completed programs successfully. ███████████████████████████████████

███████████████████████████████████████████████████

███████ Robert has done so lately and has been in compliance with his conditions of release in this matter.  See ECF Nos. 11, 15, 24, 26.

Robert currently works for his father's construction company and lives alone in a home that his father owns.

### b. Nature and Circumstances of the Offense

Robert went to the Capitol Building after being told that there would be a peaceful protest there after the rally.[3]  The former President told his supporters that they would go down to the Capitol *together* as he said, "we're going to walk

---

[3] For an hour, President Trump encouraged his supporters to "fight" for him.  He said, "We will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will have an illegitimate president.  That's what you'll have.  And *we* can't let that happen…And *we* fight.  *We* fight like hell.  And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

down to the Capitol."[4] So, Robert followed the enormous crowd down to the Capitol building. He entered the Capitol building at approximately 2:25 P.M., but did not participate in any destruction of property, did not shout at police or show any aggression towards law enforcement, and left voluntarily.

Robert is truly remorseful for his conduct. He accepted responsibility early on, has been compliant with his pre-trial release conditions, and has distanced himself completely from the events on January 6, 2021.

The government in its sentencing memorandum accuses Mr. Ballesteros of lack of remorse based on him removing the video of him inside the Capitol building from his phone immediately after January 6, 2021. *See* Gov. Memo at 11-13. However, his decision to take the video off of Instagram as well as his comments he made on Instagram were done on January 7, 2021, just one day after he came home from D.C. He has not made any statements since then and is embarrassed by his immature behavior. Furthermore, there is no evidence he ever was near the Ashli Babbitt shooting and him telling his friends he took a video of it was just an immature reaction to their questioning him about the events that unfolded that day.

> c. **The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

---

[4] *Id.*

The request for twenty-four months' probation acknowledges the need to promote respect for the law and provide just punishment. Mr. Ballesteros concurs with the recommendation of United States Probation that "a period of incarceration does not appear to be needed for specific deterrence in this case and to promote respect for the law." *See* ECF No. 35. A period of supervision is far more effective than a jail sentence, especially in this case where the interests of rehabilitation clearly far outweigh the interests in incarceration.

Furthermore, a sentence of 24 months' probation is in line with similar past sentences imposed. For example, in *U.S. v. Jordan Stotts*, 21-CR-272 (TJK), the Court sentenced the defendant to 24 months' probation for similar conduct. Stott also made similar statements on social media prior to January 6, 2021. Further, in *United States v. Eliel Rosa*, 1:21-CR-068 (TNM), the Court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.[5] The request for 24 months' probation here acknowledges the fact that Mr. Ballesteros was near individuals trying to breach the building and push past officers. However, he did not participate and any mention on social media of him saying "we broke in," was obviously not supported by the evidence and was again immature posturing.

---

[5] *See also U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (sentenced to 24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (sentenced to 12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (sentenced to 12 months' probation);

7

This case can be distinguished from those who received lengthier periods of probation.  For example, the court in *U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN), imposed 36 months' probation for a defendant who had no criminal history, however showed a true lack of remorse to the FBI during a recorded interview, saying "he did nothing illegal," and believed he did nothing wrong. In that case, the government recommended that the defendant serve two of those months on home detention, however the court imposed 60 hours of community service instead.  Furthermore, in *United States v. Jackson Kostolsky*, 21-cr-197 (DLF), the Court imposed a sentence of 36 months' probation with 1 month' home detention.  It appears as though the aggravating factor that led to a condition of one month' home detention was post January 6 statements he made saying he had "fun," and the politicians were "crawling in fear."  The government also accused him of deleting videos from his phone post January 6, 2021.  In the instant case, Mr. Ballesteros has served more than a year of supervision successfully already and has been remorseful ever since he realized the gravity of his participation.[6]

The government provides the *Miller* case (21-CR-266-TSC) as a justification for requesting 14 days' incarceration.  *See* Gov. Memo at 24.  However, similar conduct is not the only factor when considering sentencing disparities.  Mr. Ballesteros has a long history of struggling with his mental health after experiencing a tragic event in his life. Furthermore, he did not have the parental

---

[6] Mr. Ballesteros did make a few post January 6, 2021 comments that were immature and that he deeply regrets.  However, his social media comments were short-lived and he has been remorseful ever since.

guidance necessary during his childhood and adolescence to develop into a mature young man. That is something he is working on and has shown positive strides in his rehabilitation in the past year. These background and history factors were not present in the *Miller* case and should be considered as mitigating factors here.

Lastly, general deterrence has also been served as the whole world has already observed the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge. The advancement of technology and the rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. Given the global pandemic and the need to conduct hearings via video conference, the world can actually listen to what happens to defendants on a public call in line. There is no doubt that general deterrence has been served, especially in these cases where the public knows every detail and understands exactly what would happen to them if this behavior is ever repeated.

## **CONCLUSION**

For the reasons stated above, Mr. Ballestros respectfully requests that the Court impose 24 months' probation. Mr. Ballestros also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org